UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS | |
| Plaintiff, | |
| vs. | Civil Action No. 06-cv-281-T |
| THE TOWN OF WEST WARWICK, RHODE ISLAND, AND THE ZONING BOARD OF REVIEW OF THE TOWN OF WEST WARWICK, RHODE ISLAND | |
| Defendants. | |

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications ("Nextel"), by its attorneys Devine Millimet & Branch P.A. and Blish & Cavanagh, LLP, respectfully moves for summary judgment on Count I of its Complaint against the defendants Town of West Warwick, Rhode Island ("West Warwick" or the "Town") and the Zoning Board of Review, on the grounds that the Decision of the Zoning Board of Review to deny Nextel permission to construct a wireless antenna facility in the Town was not "in writing and supported by substantial evidence contained in a written record" as required by Section 704 of the Telecommunications Act of 1996, 47 U.S.C.§332(c)(7)(B) (the "TCA") and must therefore be overturned. In support of its motion Nextel states as follows:

1. Nextel commenced this case after the Town refused to authorize Nextel to construct wireless antenna facilities. Nextel had sought permission to replace an existing 63-foot

tall electric transmission stanchion (Narragansett Electric Pole #184W), located alongside Wakefield Street, with a 100' 6" tall structure capable of supporting Nextel's wireless antennas; to add an antenna array to the top of that replacement structure; and, to install electronic equipment at the base thereof.

2. The Zoning Board held two public hearings on Nextel's application, during which Nextel explained the details of its application, including photosimulations which demonstrated that its proposed facilities would have minimal visual impact. Nextel also presented testimony, including expert testimony, which demonstrated the need for its proposed facilities. Nextel's expert, moreover, used computer-generated models to help explain his conclusions and explained the lack of feasible alternatives.

3. Several residents of the Town spoke in opposition to the Nextel proposal. Their remarks were brief and vague and did not amount to substantial evidence. Nevertheless, in an effort to address their concerns, Nextel redesigned its proposed facility to further minimize the visibility thereof and submitted revised plans.

4. At the conclusion of all the testimony, the Zoning Board received a motion to approve. The motion, however, failed to receive a second and accordingly it did not carry.

5. In short, despite the minimally intrusive nature of the proposed Nextel facilities, despite the absence of any better or more feasible alternatives, and despite the absence of substantial opposition, the Zoning Board refused to grant Nextel's application for variances. The decision denying Nextel's application was reduced to writing and filed with the Town Clerk on or about May 18, 2006.

6. In its Decision, the Zoning Board simply states that the "application fails for lack of a second to the motion to approve." No other reason, let alone even one specific rationale for

the denial, has been provided to Nextel.

7. One of the cornerstones of the TCA's "substantial evidence" test is a requirement that the denial of any application seeking to construct wireless antenna facilities be set forth in a written decision which specifically explains each reason for the denial. Because the Town's Zoning Board failed to issue such a decision, its denial cannot be allowed to stand.

8. In further support of its motion, Nextel submits a Statement of Undisputed Facts, a Memorandum of Law, the Declaration of Ricardo Sousa, Esquire, and the Exhibits to that Declaration. The said Exhibits are being served and filed by conventional means pursuant to the Court's Administrative Procedures for Electronic Filing, Nos. 4(b)(1)(B) & (F), in that the Exhibits consist of the record of the administrative proceedings below and, also, in that the exhibits exceed the maximum file size (2.5 megabytes) for electronically-filed documents. In addition, the Exhibits exceed the 20-page limit specified in the rules of the Honorable Ernest Torres, Chief Judge, because they constitute an administrative record within the meaning of rule 4(a).

WHEREFORE, Nextel respectfully requests that an order be entered:

A. Granting summary judgment to Nextel on Count I of its Complaint, on the grounds that the Decision of the Town's Zoning Board of Review is not "in writing and supported by substantial evidence contained in a written record" as required by the TCA;

B. Overturning the Decision and ordering the Town to grant the zoning relief requested by Nextel so that construction of the proposed antenna facilities can proceed without further delay; and

C. Granting Nextel such other and further relief as the Court deems just and proper.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS**

By its Attorneys,
**DEVINE, MILLIMET & BRANCH, PROFESSIONAL ASSOCIATION**

Dated: February 23, 2007

By: /s/ Steven E. Grill
Steven E. Grill, Esquire (admitted *pro hac vice*)
111 Amherst Street
Manchester, NH 03101
Telephone: (603) 669-1000
sgrill@devinemillimet.com

**BLISH & CAVANAGH, LLP**

By: /s/ Karen A. Pelczarski
Karen A. Pelczarski, Esquire (#3357)
30 Exchange Terrace
Providence, Rhode Island 02903-1765
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
kap@blishcavlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2007, a copy of the foregoing Motion for Summary Judgment was forwarded by first class mail, postage prepaid, to Timothy A. Williamson, Esq., Inman, Tourgee & Williamson, 1193 Tiogue Avenue, Coventry, RI 02816.

/s/ Karen A. Pelczarski
Karen A. Pelczarski, Esquire (#3357)

J:\wdox\docs\clients\10339\77947\M0977628.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS<br><br>Plaintiff,<br><br>vs.<br><br>THE TOWN OF WEST WARWICK, RHODE ISLAND, AND THE ZONING BOARD OF REVIEW OF THE TOWN OF WEST WARWICK, RHODE ISLAND<br><br>Defendants. | Civil Action No. 06-cv-281-T |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications ("Nextel") respectfully submits the following Memorandum of Law in Support of its Motion for Summary Judgment against the Town of West Warwick, Rhode Island ("West Warwick" or the "Town") and the Zoning Board of Review.

## INTRODUCTION

Nextel commenced this case after the Town refused to authorize Nextel to construct wireless antenna facilities. Nextel had sought permission to replace an existing 63-foot tall electric transmission stanchion (Narragansett Electric Pole #184W), located alongside Wakefield Street, with a 100' 6" tall structure capable of supporting Nextel's wireless antennas; to add an

antenna array to the top of that replacement structure; and, to install electronic equipment at the base thereof. The Town denied Nextel's request to install these facilities.

In its Complaint, Nextel alleges that the Town's refusal to allow Nextel to replace the structure and to install antennas thereon violates Section 704 of the Telecommunications Act of 1996, 42 U.S.C. § 337(c)(7)(B) (the "TCA"), in that the refusal does not comply with the TCA's requirements for a written decision supported by substantial evidence contained in a written record; and, in that the refusal effectively prohibits Nextel from providing personal wireless services in a significant portion of West Warwick. Nextel seeks an injunction directing the Town to authorize construction of the proposed facilities to proceed without further delay.

Nextel now moves for summary judgment on Count I of its Complaint.[1]

## STATEMENT OF FACTS[2]

Nextel is licensed by the Federal Communications Commission ("FCC") to provide enhanced specialized mobile radio services in certain markets, including Rhode Island. These services are a type of commercial mobile radio services which are within the definition of "personal wireless services" set forth at 47 U.S.C. § 332(c)(7)(C)(i).

Nextel's PWS network is entirely digital and employs time division multiple access ("TDMA") technology. The network requires deployment of antennas throughout the area to be covered, which are connected to receivers and transmitters that operate in a limited geographic area known as a "cell." The antennas and related equipment which Nextel needs to deploy in order to provide PWS to its customers are within the definition of "PWS facilities" set forth at 47

[1] Pursuant to the scheduling order proposed by the parties and adopted by the Court at the pretrial conference on January 9, 2007, summary judgment motions addressed to the substantial evidence question are to be filed and decided first on the written record which was presented to the ZBA before adjudication of the prohibition claim.

[2] Unless otherwise noted, the statements of fact herein are taken from the Declaration of Ricardo Sousa, Esquire, dated February 21, 2007.

U.S.C. § 332(c)(7)(C). Nextel's portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment.

The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the topography of the land, vegetative cover and natural or man-made obstructions in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest Nextel facility without interruption in service, provided that there is overlapping coverage from the cells. In order for Nextel's network to function effectively, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. In other words, Nextel's antennas must be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, and adequate service. Nextel's antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service.

**Nextel's Coverage Gap**

West Warwick is a populated area which includes heavily traveled roadways such as Interstate 95, Interstate 295, and Rhode Island Route 2, 33 and 117. Many actual and potential Nextel customers live, work or travel through these areas. In or about 2005, Nextel determined that it needed to install additional antenna facilities in West Warwick in order to serve their

present customers and potential customers adequately.

**West Warwick's Regulations**

The Town has a zoning ordinance (the "Ordinance"), pursuant to which wireless antenna towers are specifically prohibited entirely in all residentially zoned districts. In addition, Section 5.7.6.1.4 appears to require the approval of the Zoning Board of Review of all wireless Antenna towers located anywhere in the Town.

**Nextel's Proposal**

With its network engineering requirements and the criteria of the West Warwick Zoning Ordinance in mind, Nextel explored possible locations. Nextel determined that it would need to locate a facility somewhere in the vicinity of Wakefield Street, which is a residentially zoned area. It also determined, for a variety of reasons, that mounting antennas on a structure located on land owned by the Narragansett Electric Company alongside Wakefield Street would be the best option. Among other things, the land is located in an area of significant elevation, which eliminates the need for a very tall structure. In addition, the land already contains an electric transmission line with stanchions as tall as 63 feet, and a water tower is located on adjacent land. Thus, a facility in this location would not create significant additional visual impacts. The area where the Narragansett Electric Company's land is located is in the R-10 residential zoning district. Accordingly, any wireless tower in this area would require a use variance. In addition, it appears that the Ordinance also requires a dimensional variance to allow for the height of any wireless antenna tower.

Nextel obtained permission from Narragansett Electric Company to replace an existing 63-foot tall stanchion with a 100.5-foot tall tower and to build an equipment shelter at the base of this structure. In or about February, 2006, Nextel submitted an application for a use variance and

a dimensional variance, with supporting materials, to the Town's Zoning Board of Review. The Zoning Board held public hearings with respect to Nextel's application for variances on March 29, 2006 and April 26, 2006.

During the hearing process, Nextel explained the details of its application, including photosimulations which demonstrated that its proposed facilities would have minimal visual impact. Nextel also presented testimony, including expert testimony, which demonstrated the need for its proposed facilities. Nextel's expert, moreover, used computer-generated models to help explain his conclusions, and explained the lack of feasible alternatives. At the March 29, 2006 hearing, several residents of the Town spoke in opposition to the Nextel proposal. Their remarks were brief and vague, and did not include any scientific evidence. Nevertheless, in an effort to address their concerns, Nextel redesigned its proposed facility to further minimize the visibility thereof and submitted revised plans at the April 26 hearing. Nextel also explored an alternative location which had been suggested by the Board, but concluded it was not feasible. At the conclusion of all of the testimony, the Zoning Board received a motion to approve. The motion, however, failed to receive a second and accordingly it did not carry.

In short, despite the minimally intrusive nature of the proposed Nextel facilities, despite the absence of any better or more feasible alternatives, and despite the absence of substantial opposition, the Zoning Board refused to grant Nextel's application for variances. The decision denying Nextel's application was reduced to writing and filed with the Town Clerk on or about May 18, 2006.

In its Decision, the Zoning Board simply states that the "application fails for lack of a second to the motion to approve." No other reason, let alone even one specific rationale for the denial, has been provided to Nextel.

Nextel contends that the Zoning Board's Decision is insufficient as a matter of law. The TCA requires a local board to issue a written decision which explains the specific reasons for the denial. Without such a written decision, the local board's action cannot be sustained.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). While the non-moving party is entitled to all favorable inferences, it must set forth specific facts showing that there remains a genuine issue of material fact for trial. *See* Fed.R.Civ.P. 56(e). A factual dispute is genuine only if "the parties' positions on the issue are supported by conflicting evidence." *International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196, 199-200 (1st Cir. 1996). A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In cases arising under Section 704 of the TCA, summary judgment is particularly appropriate because Congress has mandated that the cases are to be decided "on an expedited basis." 47 U.S.C. § 332 (c)(7)(B)(v). *See Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999). Accordingly, summary judgment is warranted at this time, based on the record of the hearings before the Zoning Board of Review.

## ARGUMENT

### I. The TCA Imposes Procedural and Substantive Limits upon the Ability Of Local Governments To Regulate The Placement And Construction Of Wireless Telecommunication Facilities

Congress enacted the TCA in order to accelerate private sector deployment of advanced telecommunication technologies and to make wireless telephone services available to all Americans. The TCA has been described as "expansive legislation designed primarily to

increase competition in the telecommunications industry . . . [and] to 'take down the barriers'" faced by parties entering the telecommunications market. *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 49-50 (D.Mass. 1997). To accomplish this national policy, "the TCA significantly limits the ability of state and local authority to apply zoning regulations to wireless telecommunications." *TeleCorp Realty, LLC v. Town of Edgartown*, 81 F.Supp. 2d 257, 259 (D. Mass. 2000) (*quoting Town of Easton*, 982 F. Supp. at 49). Local zoning powers are preserved, but only to the extent that they do not conflict with the rights granted to the telecommunications industry under the TCA. *Town of Easton*, 982 F. Supp. at 50.

As the First Circuit has explained, the TCA is "an exercise in cooperative federalism [which] represents a dramatic shift in the nature of telecommunications regulation." *National Tower v. Plainville Zoning Board of Appeals,*, 297 F.3d 14, 19 (1st Cir. 2002). The TCA reflects a "deliberate compromise" between two competing aims: facilitating the national growth of wireless telephone service while maintaining substantial local control over the siting of wireless communication facilities. *See ATC Realty v. Town of Kingston, New Hampshire*, 303 F.3d 91, 94 (1st Cir. 2002) (TCA works "like a scale" that attempts to balance need to accelerate deployment of telecommunications technology and desire to preserve state and local control over zoning matters). See also *Town of Amherst v. Omnipoint Communications*, 173 F.3d 9, 13 (1st Cir. 1999). The balancing effectuated by the TCA protects "wireless service providers from unsupported decisions that stymie the expansion of telecommunications technology." *ATC Realty*, 303 F.3d at 94 (*citing Brehmer v. Planning Board of Wellfleet*, 238 F.3d 117, 122 (1st Cir. 2001)).

In short, although the TCA does not supplant local land use authority with respect to the construction of wireless telecommunications facilities, it does impose both procedural and

substantive limits upon the power of local governments to regulate the placement and construction of such facilities. *Town of Amherst*, 173 F.3d at 12 (1st Cir. 1999).

## II. The Town's Refusal To Permit Installation Of The Nextel Antenna Was Not "In Writing And Supported By Substantial Evidence Contained In A Written Record"

One of the TCA's procedural limits on local government authority is the requirement that any decision denying authorization to construct a wireless antenna facility must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii). As explained by the First Circuit Court of Appeals, this provision of "the TCA... provides protections from irrational or substanceless decisions by local authorities....by invoking the traditional standard under which federal courts review administrative action." *Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 57-58 (1st Cir. 2001). "This review, though highly deferential, 'is not a rubber stamp.' An agency, and by extension the board, 'is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands.'" Under this standard, "all evidence must have been considered by the board, adequate explanations for rejecting relevant evidence must have been provided, and the board's decision must have been accompanied by a clear and satisfactory explication of the basis on which it rests." *Id.* at 58-59 (citations omitted).

One of the cornerstones of the TCA's substantial evidence test is the requirement that the local board issue a written decision which sets forth the specific rationales upon which the board relied in denying an application. *Todd*, 244 F.3d at 58-59. Upon review, the board is limited to those rationales and cannot add to them; "[a] board's decision may not present a moving target . . . .[the court] will not uphold a board's denial of a permit on grounds that [the board] did not present in its written decision." *Id.* Indeed, even where "the record reflects unmistakably the Board's reasons for denying the permit," the written denial must be "separate from the written

record" and "contain a sufficient explanation of the reasons for the permit denial to allow the reversing court to evaluate the evidence in the record supporting those reasons." *Todd*, 244 F.3d at 60.

In the instant case, the West Warwick's ZBR contained no grounds at all, but merely recited the fact that Nextel's "application fails for lack of a second to the motion to approve." See Decision (Sousa Declaration, Exhibit H). This type of conclusory decision fails to "give the applicant a fair chance to respond the board's reasons;" *National Tower*, 297 F.3d at 22. There is no way to tell why Nextel's application was denied or, for that matter, what legitimate concerns might be addressed in any subsequent proceeding. For these reasons, the Zoning Board's Decision is fatally defective.

## III. Nextel Is Entitled To Immediate Relief

The TCA provides for prompt judicial resolution of appeals from decisions which deny wireless carriers the right to construct antenna facilities. 47 U.S.C. § 332(c)(7)(B)(iv) ("the court shall hear and decide such [appeals] on an expedited basis"). The First Circuit has established that in a situation where a municipality has violated the TCA by denying a permit, the appropriate remedy is usually "injunctive relief in the form of an order requiring that the wrongfully withheld permit issue." *Brehmer v. Planning Bd. of Town of Wellfleet*, 238 F.3d 117, 120 (1st Cir. 2001). *See also National Tower*, 297 F.3d at 24, *and see Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (". . . the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits."). The proper result in this case, therefore, would be an order directing the Town to allow construction of the proposed facility to begin immediately.

## CONCLUSION

Nextel respectfully requests this Court to grant summary judgment in Nextel's favor on Counts I of the Complaint and to issue an injunction directing the Town and its instrumentalities to issue immediately all permits and approvals needed so that construction of the proposed facility can begin without delay.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS**

By its Attorneys,
**DEVINE, MILLIMET & BRANCH, PROFESSIONAL ASSOCIATION**

Dated: February 23, 2007

By: /s/ Steven E. Grill
Steven E. Grill, Esquire (admitted *pro hac vice*)
111 Amherst Street
Manchester, NH 03101
Telephone: (603) 669-1000
sgrill@devinemillimet.com

**BLISH & CAVANAGH, LLP**

By: /s/ Karen A. Pelczarski
Karen A. Pelczarski, Esquire (#3357)
30 Exchange Terrace
Providence, Rhode Island 02903-1765
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
kap@blishcavlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2007, a copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was forwarded by first class mail, postage prepaid, to Timothy A. Williamson, Esq., Inman, Tourgee & Williamson, 1193 Tiogue Avenue, Coventry, RI 02816.

/s/ Karen A. Pelczarski
Karen A. Pelczarski, Esquire (#3357)

J:\wdox\docs\clients\10339\77947\M0977628.DOC