UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS, Plaintiff, | |
| vs. | Civil Action No. 06-cv-281-T |
| THE TOWN OF WEST WARWICK, RHODE ISLAND, AND THE ZONING BOARD OF REVIEW OF THE TOWN OF WEST WARWICK, RHODE ISLAND, Defendants. | |

**DECLARATION OF RICARDO SOUSA, ESQ.**

I, Ricardo Sousa, declare as follows:

1. I am over the age of 18, have personal knowledge of the facts recited below and am otherwise competent to testify. I make this Declaration in support of the motion by Nextel Communications of the Mid-Atlantic, Inc. ("Nextel"), for summary judgment.

2. I am a member of the law firm of Prince, Lobel, Glovsky & Tye, LLP of Boston, Massachusetts, and I am licensed to practice law in Rhode Island. I was retained by Nextel to assist it in presenting an application to the Zoning Board of Review of West Warwick, Rhode Island (the "Zoning Board"), for variances needed to replace an existing 63-foot tall electric transmission tower owned by Narragansett Electric Company with a 100'6" tall monopole capable of supporting both the Narragansett Electric Company's transmission lines and antennas which Nextel needs to deploy in this vicinity in order to provide coverage to those of its customers who live, work or travel through this part of Rhode Island. After submitting the

application, I attended the public hearing held by the Zoning Board with respect to the same.

**BACKGROUND FACTS**

3. Nextel is a corporation organized and existing under the laws of the State of Delaware and has a regional office at 9 Crosby Drive, Bedford, Massachusetts. Nextel is licensed by the Federal Communications Commission of the United States of America to provide wireless telecommunications services in various areas, including Rhode Island.

4. Nextel is a provider of enhanced specialized mobile radio services, a type of personal commercial mobile radio services ("CMRS") which are within the definition of PWS set forth at 47 U.S.C. § 332(c)(7)(C)(i). Nextel is licensed by the FCC to provide PWS in certain markets, and it has certain obligations under that license to provide such services.

5. Nextel's PWS network is entirely digital and employs time division multiple access ("TDMA") technology. The network requires deployment of sets of antennas and other electronic equipment throughout the area to be covered. Each set of antennas is connected to radio receivers and transmitters which operate in a limited geographic area, known as a "cell."

6. The antennas and related equipment which Nextel needs to deploy in order to provide PWS to its customers are within the definition of "PWS facilities" set forth at 47 U.S.C. § 332(c)(7)(C).

7. Nextel's portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment which must be located near the antennas themselves.

8. The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the

topography of the land, vegetative cover and natural or man-made obstructions in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest Nextel facility without interruption in service, provided that there is overlapping coverage from the cells.

9. In order for Nextel's PWS network to function properly, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. Nextel's antennas must be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, adequate service and adequate capacity. Nextel's antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service.

10. West Warwick is a populated area which includes heavily-traveled roadways such as Interstate 95, Interstate 295, and Rhode Island Routes 2, 33 and 117. Many actual and potential Nextel customers live, work or travel through this area. Nextel's existing coverage is not adequate to serve this busy community. In or about 2005, Nextel determined that it needed to install additional antenna facilities in West Warwick in order to serve these customers and potential customers adequately.

11. The Town has a zoning ordinance (the "Ordinance"), pursuant to which wireless antenna towers are specifically prohibited entirely in all residentially-zoned districts. In addition, Section 5.7.6.1.4 appears to require the approval of the Zoning Board of Review of all wireless

antenna towers located anywhere in the Town. A copy of an excerpt from the Ordinance is submitted herewith as Exhibit A.

12. With its network engineering requirements and the criteria of the West Warwick Zoning Ordinance in mind, Nextel explored possible locations. Nextel determined that it would need to locate a facility somewhere in the vicinity of Wakefield Street, which is a residentially zoned area. It also determined, for a variety of reasons, that mounting antennas on a structure located on land owned by the Narragansett Electric Company alongside Wakefield Street would be the best option. Among other things, the land is located in an area of significant elevation, which eliminates the need for a very tall structure. In addition, the land already contains an electric transmission line with stanchions as tall as 63 feet, and a water tower is located on adjacent land. Thus, a facility in this location would not create significant additional visual impacts.

13. The area where the Narragansett Electric Company's land is located is in the R-10 residential zoning district. Accordingly, any wireless tower in this area would require a use variance. In addition, it appears that the Ordinance also requires a dimensional variance to allow for the height of any wireless antenna tower.

14. Nextel obtained permission from Narragansett Electric Company to replace an existing 63-foot tall stanchion with a 100.5-foot tall tower and to build an equipment shelter at the base of this structure.

**NEXTEL'S APPLICATION TO THE ZONING BOARD**

15. In or about February 2006, Nextel submitted an application for a use variance and a dimensional variance, with supporting materials, to the Town's Zoning Board of Review, copies of which are submitted herewith as Exhibit B.

16. The Zoning Board held public hearings with respect to Nextel's application for variances on March 29, 2006 and April 26, 2006. Copies of the hearing transcripts are submitted herewith as Exhibits C and D, respectively.

17. During the hearing process, Nextel explained the details of its application and presented testimony, including expert testimony, which demonstrated the need for its proposed facilities. *See* Exhibit C at pp. 5-11. Nextel's expert, moreover, used computer generated models to help explain his conclusions. *Id.* and *see* Exhibit E, submitted herewith.

18. Nextel also explained the lack of feasible alternatives. *See* Exhibit C at pp. 5-11. Nextel's application, moreover, included photosimulations which demonstrated that its proposed facilities would have minimal visual impact. *See* Exhibit B at Tab 7.

19. At the March 29, 2006 hearing, several residents of the Town spoke in opposition to the Nextel proposal. Their remarks were brief and vague. *See* Exhibit C at pp. 26-31. Nevertheless, in an effort to address their concerns, Nextel redesigned its proposed facility to further minimize the visibility thereof and submitted revised plans at the April 26 hearing. *See* Exhibit D at pp. 5-6. *See also* revised plans submitted herewith as Exhibit F. Nextel also explored an alternative location which had been suggested by the Board, but concluded it was not feasible. *See* Exhibit D at pp. 7-14. *See also* wetlands map, submitted herewith as Exhibit G.

20. At the conclusion of all the testimony, the Zoning Board received a motion to approve. See Exhibit D at pp. 18-19. The motion, however, failed to receive a second and accordingly it did not carry. *Id.*

21. Thus, despite the minimally intrusive nature of the proposed Nextel facilities, despite the absence of any better or more feasible alternatives, and despite the absence of substantial opposition, the Zoning Board refused to grant Nextel's application for variances.

22. The decision denying Nextel's application was reduced to writing and filed with the Town Clerk on or about May 18, 2006 (the "Decision," a copy of which is submitted herewith as Exhibit H).

23. In its Decision, the Zoning Board simply states that the "application fails for lack of a second to the motion to approve." No other reason, let alone even one specific rationale for the denial, has been provided.

Signed under pains and penalties of perjury this 21st day of February 2007.

Ricardo Sousa, Esquire

J:\wdox\docs\clients\10339\77947\M0977935.DOC