UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. 06-cv-281-T |
| THE TOWN OF WEST WARWICK, RHODE ISLAND, AND THE ZONING BOARD OF REVIEW OF THE TOWN OF WEST WARWICK, RHODE ISLAND | : | |
| Defendants. | : | |

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications respectfully submits the following Rule 56.1 Statement of Undisputed Material Facts:

1. Nextel is a Delaware corporation with a regional office at 9 Crosby Drive, Bedford, Massachusetts. Nextel is licensed by the Federal Communications Commission of the United States of America to provide wireless telecommunications services in various areas, including Rhode Island. Declaration of Ricardo Sousa, Esquire, sworn to February 21, 2007 ("Sousa Declaration") at ¶ 3.

2. Nextel is a provider of enhanced specialized mobile radio services, a type of personal commercial mobile radio services ("CMRS") which are within the definition of PWS set forth at 47 U.S.C. § 332(c)(7)(C)(i). Nextel is licensed by the Federal Communications

Commission ("FCC") to provide PWS in certain markets, and it has certain obligations under that license to provide such services. Sousa Declaration at ¶ 4.

3. Nextel's PWS network is entirely digital and employs time division multiple access ("TDMA") technology. The network requires deployment of sets of antennas and other electronic equipment throughout the area to be covered. East set of antennas is connected to radio receivers and transmitters that operate in a limited geographic area known as a "cell." Sousa Declaration at ¶ 5

4. The antennas and related equipment which Nextel needs to deploy in order to provide PWS to its customers are within the definition of "PWS facilities" set forth at 47 U.S.C. § 332(c)(7)(C). Sousa Declaration at ¶ 6.

5. Nextel's portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment which must be located near the antennas themselves. Sousa Declaration at ¶ 7.

6. The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the topography of the land, vegetative cover and natural or man-made obstructions in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest Nextel facility without interruption in service, provided that there is overlapping coverage from the cells. Sousa Declaration at ¶ 8.

7. In order for Nextel's network to function properly, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. Nextel's antennas must

be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, adequate service and adequate capacity. Nextel's antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service. Sousa Declaration at ¶ 9.

8. West Warwick is a populated area which includes heavily traveled roadways such as Interstate 95, Interstate 295, and Rhode Island Route 2, 33 and 117. Many actual and potential Nextel customers live, work or travel through these areas. Nextel's existing coverage is not adequate to serve this busy community. In or about 2005, Nextel determined that it needed to install additional antenna facilities in West Warwick in order to serve these customers and potential customers adequately. Sousa Declaration at ¶ 10.

9. The Town has a zoning ordinance (the "Ordinance"), pursuant to which wireless antenna towers are specifically prohibited entirely in all residentially-zoned districts. In addition, Section 5.7.6.1.4 appears to require the approval of the Zoning Board of Review of all wireless antenna towers located anywhere in the Town. Sousa Declaration at ¶ 11 and Exhibit A.

10. With its network engineering requirements and the criteria of the West Warwick Zoning Ordinance in mind, Nextel explored possible locations. Nextel determined that it would need to locate a facility somewhere in the vicinity of Wakefield Street, which is a residentially zoned area. It also determined, for a variety of reasons, that mounting antennas on a structure located on land owned by the Narragansett Electric Company alongside Wakefield Street would be the best option. Among other things, the land is located in an area of significant elevation, which eliminates the need for a very tall structure. In addition, the land already contains an

electric transmission line with stanchions as tall as 63 feet, and a water tower is located on adjacent land. Thus, a facility in this location would not create significant additional visual impacts. Sousa Declaration at ¶ 12.

11. The area where the Narragansett Electric Company's land is located is in the R-10 residential zoning district. Accordingly, any wireless tower in this area would require a use variance. In addition, it appears that the Ordinance also requires a dimensional variance to allow for the height of any wireless antenna tower. Sousa Declaration at ¶ 13 and Exhibit A.

12. Nextel obtained permission from Narragansett Electric Company to replace an existing 63-foot tall stanchion with a 100.5-foot tall tower and to build an equipment shelter at the base of this structure. Sousa Declaration at ¶ 14.

13. In or about February, 2006, Nextel submitted an application for a use variance and a dimensional variance, with supporting materials, to the Town's Zoning Board of Review. Sousa Declaration at ¶ 15 and Exhibit B.

14. The Zoning Board held public hearings with respect to Nextel's application for variances on March 29, 2006 and April 26, 2006. Sousa Declaration at ¶ 16 and Exhibits C and D.

15. During the hearing process, Nextel explained the details of its application and presented testimony, including expert testimony, which demonstrated the need for its proposed facilities. *See* Exhibit C at pp. 5-11. Nextel's expert, moreover, used computer-generated models to help explain his conclusions. *Id.* and *see* Sousa Declaration at ¶ 17 and Exhibit E.

16. Nextel also explained the lack of feasible alternatives. *See* Exhibit C at pp. 5-11.

17. Nextel's application included photosimulations which demonstrated that its proposed facilities would have minimal visual impact. *See* Exhibit B at Tab 7 and Sousa Declaration at ¶ 18.

18. At the March 29, 2006 hearing, several residents of the Town spoke in opposition to the Nextel proposal. Their remarks were brief and vague. *See* Exhibit C at pp. 26-31. In an effort to address their concerns, Nextel redesigned its proposed facility to further minimize the visibility thereof and submitted revised plans at the April 26 hearing. *See* Exhibit D at pp. 5-6. *See also* revised plans (Sousa Declaration, Exhibit F.) Nextel also explored an alternative location which had been suggested by the Board, but concluded it was not feasible. *See* Exhibit D at pp. 7-14. *See also* Sousa Declaration at ¶ 19 and Exhibit G.

19. At the conclusion of all the testimony, the Zoning Board received a motion to approve. *See* Exhibit D at pp. 18-19. The motion, however, failed to receive a second and accordingly it did not carry. *Id. See also* Sousa Declaration at ¶ 20.

20. Despite the minimally intrusive nature of the proposed Nextel facilities, despite the absence of any better or more feasible alternatives, and despite the absence of substantial opposition, the Zoning Board refused to grant Nextel's application for variances. Sousa Declaration at ¶ 21.

21. The decision denying Nextel's application was reduced to writing and filed with the Town Clerk on or about May 18, 2006 (the "Decision"). Sousa Declaration at ¶ 22 and Exhibit H.

22. In its Decision, the Zoning Board simply states that the "application fails for lack of a second to the motion to approve." No other reason, let alone even one specific rationale for the denial, has been provided. Sousa Declaration at ¶ 23 and Exhibit H.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS**

By its Attorneys,
**DEVINE, MILLIMET & BRANCH, PROFESSIONAL ASSOCIATION**

Dated: February 23, 2007

By: /s/ Steven E. Grill

Steven E. Grill, Esquire (admitted *pro hac vice*)
111 Amherst Street
Manchester, NH 03101
Telephone: (603) 669-1000
sgrill@devinemillimet.com

**BLISH & CAVANAGH, LLP**

By: /s/ Karen A. Pelczarski

Karen A. Pelczarski, Esquire (#3357)
30 Exchange Terrace
Providence, Rhode Island 02903-1765
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
kap@blishcavlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2007, a copy of the foregoing Plaintiff's Rule 56.1 Statement of Undisputed Material Facts was forwarded by first class mail, postage prepaid, to Timothy A. Williamson, Esq., Inman, Tourgee & Williamson, 1193 Tiogue Avenue, Coventry, RI 02816.

/s/ Karen A. Pelczarski
Karen A. Pelczarski, Esquire (#3357)

J:\wdox\docs\clients\10339\77947\M0977538.DOC